file her petition was lawful, and in no wise worked an injury to appellant or deprived him of any lawful right.

2. That the appellant having proceeded to hearing under said petition without objection, and submitted his case to the court upon its merits, he is bound by the finding of the court and must obey the decree.

PER CURIAM.

This order unanimously affirmed, for the reasons given by Vice-Chancellor Bird.

———

DANIEL MORRIS, appellant,

v.

RICHARD A. F. PENROSE et al., respondents.

In 1861, the complainant conveyed certain lands to Quigleys, together with a plot twenty feet square, in an adjoining tract. In 1873, he conveyed all the adjoining tract to Mrs. Penrose, without excepting the said plot. In 1879, Mrs. Penrose, who had exclusive possession of the whole tract conveyed to her, was evicted by the Quigleys, who had, meanwhile, obtained a riparian title to the whole tract between complainant's original lands and the ocean. In 1881, Mrs. Penrose died, and in 1882 her executor brought an action at law against complainant for breach of the covenant of warranty in her deed. Thereupon, complainant filed his bill to enjoin that action, on the ground of mistake in Mrs. Penrose's deed, and asking that her deed be reformed, by inserting therein an exception of the said plot.—*Held*, that the application should be denied, on the ground that there was no proof that the mistake was mutual, and that, even if there had been proved a promise made to complainant by Mrs. Penrose's attorney, at the time her deed was executed, to insert an exception of said plot, in her deed, such promise could not be deemed hers, so as to entitle complainant to the relief sought.

———

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is as follows:

Morris v. Penrose.

I am not satisfied that the complainant has made his case. The evidence is circumstantial, at best, and, if it deserves that name, is very frail; in other words, inferential. Undoubtedly, there was an agreement between complainant and Mrs. Penrose by which he agreed to sell her a lot of land, but there is no semblance of an agreement between them produced in the testimony, oral or otherwise. The only intimation in the proof is by the complainant himself, when he says he told Mr. Dayton that the exception of the Quigley lot was omitted from the deed which he, Mr. Dayton, had drawn and presented to the complainant for execution, and when he says, upon being recalled, that he made Mrs. Penrose acquainted with it—that is, with the rights of the Quigleys.

Now, I can see nothing in all this which brings the case within the requirements of the well-settled rule that mistakes in agreements, to authorize the interference of the court, must be *mutual*. There is nothing whatever to show that Mrs. Penrose agreed to take a deed for the lot in question, subject to the rights of the Quigleys to the use of twenty feet of it for a bath-house. The complainant says that when Mr. Dayton presented him the deed, he informed him it was not complete, because it did not contain the stipulated reservation, and that Mr. Dayton prevailed upon him to execute the deed, and that he did execute it, upon the promise of Mr. Dayton that he would not deliver it to Mrs. Penrose until he had inserted the reservation of the right of the Quigleys. Mr. Dayton failed to insert any such reservation. His omission, however, is not discovered until the period of eight years has elapsed. It is claimed that this promise and omission upon the part of Mr. Dayton were the promise and omission of Mrs. Penrose, because Mr. Dayton was her agent. The only evidence of his agency is the fact that he had prepared, carried to and presented to the complainant the deed which is sought to be reformed, and witnessed the signature of the complainant and took his acknowledgment thereof. As above stated, the complainant says at this period he exacted a promise from Mr. Dayton that he would not deliver the deed until the reservation had been inserted. Supposing, therefore, that Mr. Dayton had

Morris v. Penrose.

been selected as the agent of Mrs. Penrose, to procure the execution of the deed in question, it must be presumed that he was her agent for the execution of the deed as it is and as it was presented to the complainant and not her agent, to procure the execution of another and a very different deed, and consequently, when the complainant relied upon Mr. Dayton to change the deed by inserting the reservation, he made Mr. Dayton his own agent, and, as a matter of law, the neglect or omission was his own.

It is true the complainant says he made Mrs. Penrose acquainted with the exception, but when or under what circumstances does not appear—whether before the agreement was completed or at the time or after the execution and delivery of the deed. Besides, it must be noticed that the complainant did not make this known until after his cross-examination was concluded and he had signed his testimony and was recalled.

This view of the case makes it unnecessary, as well as unprofitable, to investigate and determine how far the complainant was a competent witness, and whether the objection to him as such, or to any portions of his testimony, was made in due time.

*Mr. Harry L. Slape,* for appellant.

In this case, the answer is not evidence, though sworn to, because its denials, or the facts it alleges are not within the knowledge, and are not averred so to be of the parties who answer, so that the rule that two witnesses, or evidence equivalent thereto, is necessary to overcome the answer, does not apply. *Brown* v. *Buckley, 1 McCart. 298; 9 Cranch 160; 2 Beas. 217; 4 C. E. Gr. 280.*

One who seeks to rectify an instrument on the ground of a mistake, must be able to prove not only that there has been a mistake, but must be able to show the exact form to which the deed ought to be brought, in order that it can be set right, according to what was really intended by the parties, and must be able to establish, in the clearest and most satisfactory manner, that the alleged intention of the parties to which he desires to

make it comformable, continued concurrently in the minds of all parties down to the time of its execution.    *Ramsey* v. *Smith, 5 Stew. Eq. 31; Loss* v. *Obry, 7 C. E. Gr. 54; Stines* v. *Hays, 9 Stew. Eq. 369.*   As a general rule, a court of equity will only interfere to correct a mistake in a written instrument when it has been mutual, and does not embody the terms as fully understood by both parties.   But this rule does not prevail either where the party against whom the relief is sought has acted in bad faith or disingenuously, with full apprehension that the instrument did not express what the other party desired or intended, or where confidence was reposed in him, and he was entrusted with and assumed the preparation of the instrument, but has, in its preparation, either willfully or negligently, omitted what had been clearly stated to him as the intention of the other party (*1 Beas. 168*), who, relying on its correctness, and without any particular examination of the document so prepared, incautiously assented to it, under the supposition that it conforms to the verbal negotiation as previously agreed upon.   *Brisco* v. *Pacific Mutual Ins. Co., 4 Daly 246; Hardigree* v. *Mitchum, 15 Ala. 151; Thurmond* v. *Clark, 47 Ga. 500; Boyce* v. *Lorillard, 55 N. Y. 240; Iverson* v. *Wilburn, 65 Ga. 103; Stines* v. *Hays, 9 Stew. Eq. 369.*

There can be no laches, because the bill alleges that it was only a short time prior to her death that he learned of the omission, and the answer does not deny it.   *68 Ill. 128; 47 Md. 453.*

Chancery will grant relief where injustice is done by mistake or otherwise, and the party is otherwise without remedy.   *Doty* v. *Judson, 2 Root 427.*

A court of equity is competent to correct or reform any material mistake in a deed, whether that mistake arises from the omission or insertion of a material stipulation, and whether it be made out by parol testimony or confirmed by more cogent proof.   *Tilton* v. *Tilton, 9 N. H. 385.*

A mistake may be corrected between the original parties, or those claiming under them in priority, as heirs, devisees, legatees, assignees, voluntary grantees or judgment creditors, or purchasers

from them without notice. *Simmons* v. *North, 3 Sm. & Marsh. 67; Wall* v. *Arrington, 13 Ga. 88; Strang* v. *Beach, 11 Ohio St. 283; Kerr on Fraud and Mistake 419, note.*

If the mind of the court is satisfied, the requirement of the court is complied with. *Kerr on Fraud and Mistake 421, note.*

The court will act where the mistake is clearly established by parol evidence, even though there is nothing in writing to which the parol evidence may attach. *Kerr on Fraud and Mistake 423; 2 Dru. & War. 373.*

A party cannot avail himself of an advantage that has been obtained through the misrepresentations of a third person, although such third person is not his agent. *Kerr on Fraud and Mistake 114, note.*

There is no doubt but that parol testimony is competent to establish that the deed does not express the intention of the parties, and forms one of the exceptions to the rule which excludes parol evidence offered to vary a written contract. *McKelway* v. *Armour, 2 Stock. 115; 5 Stew. Eq. 545; 2 Johns. Ch. 583; 2 Lead. Cas. in Eq. (4th ed.) 979, 994, 1,003, 1,009.*

The complainant's case rests largely upon his own testimony. Is he a competent witness? We claim that he is, upon the following grounds:

*First.* The bill alleges, and the answer admits a devise of the land (the deed of which a correction is sought) to Richard A. F. Penrose, during his natural life, and after his death, to the children of the testatrix, all of whom are defendants, including Richard A. F. Penrose, on the ground of their individual interests in the land covered by the deed sought to be reformed; the said Richard A. F. Penrose having a life estate, the other defendants the remainder. The bill also alleges that, under certain chancery proceedings, the land was sold at public vendue to said Richard A. F. Penrose, in fee, but that, at the time of filing the bill, no deed had been delivered. This the answer admits. The bill and prayer for process is against Richard A. F. Penrose, in his individual capacity, because his interest in the relief sought in this court does not arise from his executorship, but from his individual ownership of the land covered

by the deed—that is, he is not a party to the suit or relief prayed for, by reason of his being the executor of Mrs. Penrose, but by reason of his being the owner of the land. It is true that he is mentioned as executor, in the bill, but it is outside of the equity of this suit. He is mentioned in the bill and prayer for injunction, in which the court is requested to stay certain proceedings that Penrose, as executor, has commenced in a court of law, until this court shall determine whether or not a deed which is a part of his title to lands in which he claims a life estate or is owner in fee, shall be reformed. And he is brought into this court to answer, in his individual right, why a deed which is a part of his title to lands which he claims, should not be reformed. *Hodge* v. *Cornell, 15 Vr. 457*.

*Second.* Even if we are not correct in the position taken above, yet the testimony of the complainant is competent, even where it includes transactions with, or statements by, the testatrix. *P. L. of 1880 p. 52*.

(*a*) Because, at the time of taking the testimony or recall, the statutory objection was not interposed by defendant's counsel. *Laing* v. *Byrne, 7 Stew. Eq. 54; · Osborn* v. *Reilly, 7 Stew. Eq. 66; Boon* v. *Ridgway, 2 Stew. Eq. 545*.

(*b*) Because the agreement with Dayton, the attorney of Mrs. Penrose, does not come within the provisions of the act of 1880 —that is, it does not include transactions with, or statements by, the testatrix.

There can be no doubt that, in this matter, James B. Dayton was acting as the attorney of Mrs. Penrose.

1. Has there been a mistake? The deed *Exhibit 1*, Morris to Quigley, dated October 1st, 1861, shows that Morris then conveyed to the Quigleys a lot twenty feet square, on the beach, fronting on the surf, for bath-house accommodations, out of a large tract of land which he, over twelve years afterwards, sold to Mrs. Penrose. The production of deed *Exhibit 2*, Morris to Penrose, dated September 10th, 1873, shows that its metes and bounds include this lot, and that there is no reservation in the deed.

2. Was it the intention of the parties to reserve out of the

land sold to Penrose, the lot previously conveyed to the Quigleys?

3. Was it the intention of the parties that the Quigley reservation should be inserted in the deed, and did that intention continue concurrently in the minds of all parties down to the execution of the same?

*Mr. Howard M. Cooper,* for respondents.

On October 1st, 1861, the complainant, Daniel Morris, conveyed certain premises to Francis and Patrick Quigley, together with a plot twenty feet square, in an adjoining tract belonging to him. On September 10th, 1873, twelve years after, he conveyed the whole adjoining tract, without mentioning the plot aforesaid, to Sarah H. B. Penrose, in fee. In the summer of 1879, Mrs. Penrose, having had exclusive possession of the tract down to that time, was evicted by the Quigleys, who had obtained a riparian deed over the whole distance from the original plot to the ocean, which had receded very greatly. On March 30th, 1881, Mrs. Penrose died. On June 6th, 1882, her executor brought an action against Morris for breach of covenant of warranty of title. On September 1st, 1882, the complainant filed the bill in this case, asking that the respondent be enjoined from proceeding in said action, and that the deed to Mrs. Penrose be reformed so as to contain an exception of the Quigley lot, which was omitted therefrom by mutual mistake.

The bill charges (1) that the land was sold to Mrs. Penrose subject to the Quigley reservation; (2) that the complainant refused to sign the deed until Mr. Dayton, Mrs. Penrose's attorney, promised to insert the reservation, which he did not do; (3) that the Quigleys had open and notorious occupation of the plot in question at the time the sale was made, and had kept it ever since, and Mrs. Penrose never did occupy it.

The answer alleges (1) that the deed made correctly expresses the contract; (2) denies that Mr. Dayton promised to insert the reservation; (3) denies that the Quigleys occupied any part of the premises, and alleges that Mrs. Penrose was in the exclusive

occupation thereof from the date of the deed until the summer of 1879, when she was evicted from this portion by the Quigleys.

The defendants have taken no testimony.

The only evidence produced by the complainant, other than the deed itself, to show what the contract was between him and Mrs. Penrose, is his own testimony.

The first question that arises is, Is the complainant a competent witness to testify as to the contract with Mrs. Penrose, she being dead? The deed was to her, and the bill alleges that the sale was made and notice of the reservation given to her. The bill was filed after her death, calls for an answer under oath, and makes her executor a party. The answer is upon oath by a person in a representative character, viz., her executor. The complainant is incompetent as a witness, except to disprove such parts of the answer as are responsive. *Sweet* v. *Parker, 7 C. E. Gr. 455.*

But the answer is a denial, not upon the facts stated to be within the knowledge of respondents, but in the way of pleading. Neither the bill nor the complainant's testimony asserts anything done or said, or taken part in by the respondents, in their individual capacity. Therefore, it is not to be treated as evidence, and the complainant does not fall within the exception of *Lanning* v. *Lanning, 2 C. E. Gr. 228.*

If it be evidence, two witnesses are required to overcome it.

At all events, by the act of February 25th, 1880 (*P. L. of 1880 p. 52*), the complainant is not competent to testify " as to any transaction with, or statement by, any testator or intestate represented in the said action." *Clawson* v. *Riley, 7 Stew. Eq. 348; Smith* v. *Burnett, 7 Stew. Eq. 219, 8 Stew. Eq. 314; Larison* v. *Polhemus, 9 Stew. Eq. 506.*

In the second place, supposing him to be competent, is his testimony such as to justify a chancellor in reforming the deed? The ground alleged is that, by a mutual mistake, the Quigley reservation was omitted from it. It has been intimated, in this state, that a deed should not be reformed on verbal testimony only. *Durant* v. *Bacot, 2 McCart. 412.*

Certainly, the proof must be so clear as to leave no rational

room for doubt. *Id. 414; Flaacke* v. *Mayor &c. of Jersey City, 1 Stew. Eq. 110, 115; Rowley* v. *Flannelly, 3 Stew. Eq. 612, 614.*

PER CURIAM.

This decree unanimously affirmed, for the reasons given by Vice-Chancellor Bird.

---

JOSIAH L. BALDWIN et al., executors, appellants,

*v.*

JEROME TAYLOR et al., executors, respondents.

On appeal from a decree of the chancellor, whose opinion is reported in *Baldwin* v. *Taylor, 10 Stew. Eq. 78.*

*Mr. William S. Gummere,* for appellants.

The question for determination in this case is, Whether, upon the death of Samuel Baldwin (whose surviving executors are the appellants), his son, Harris M. Baldwin, took an absolute, indefeasible estate in the property given to him by the will of his father, or whether he took an estate which was divested by his dying without issue, leaving his two brothers surviving him.

By the terms of the will of their testator, it is their duty to divide this share of the testator's estate among the surviving children of the testator, upon the death of Harris M. Baldwin without issue.

The same objection was raised in the case of *Annin* v. *Van Doren, 1 McCart. 135,* and it was there decided that the executors of the testator were proper parties to bring suit against the administrator of a deceased daughter for the purpose of recovering the share of the testator's estate which had been bequeathed to such daughter, but had been limited over upon her death without issue. See, also, *Moffat* v. *Strong, 10 Johns. 12.*